# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICOLE MAISTO<br>140 Wert Avenue<br>Hamilton, NJ 08610<br><br>　　　　Plaintiff,<br>　　v.<br><br>TJX COMPANIES, INC., d/b/a<br>HOMESENSE<br>770 Cochituate Road<br>Framingham, MA 01701<br>　　and<br>HOME GOODS INC., d/b/a HOMESENSE<br>220 Nassau Park Boulevard<br>Princeton, NJ 08540<br><br>　　　　Defendants. | CIVIL ACTION<br><br>No. _____<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### I. INTRODUCTION

1. This action has been initiated by Nicole Maisto (hereinafter referred to as "Plaintiff," unless indicated otherwise) for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. §§ 201, *et. seq*.) and applicable state law(s). Plaintiff's employer intentionally, knowingly, and recklessly <u>misclassified</u> Plaintiff as an exempt employee while her "primary duties" were the performance of non-exempt work. Plaintiff is owed substantial unpaid overtime compensation; and as a result, Plaintiff seeks damages as set forth herein.

### II. JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because they arise under a federal law - the FLSA. There is supplemental and/or ancillary

jurisdiction over Plaintiff's state-law claims asserted herein as they arise out of the same common nucleus of operative facts as her federal claims.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### III. PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. TJX Companies, Inc. (hereinafter, "Defendant TJX") "launched" and opened HomeSense in 2001. Defendant TJX is headquartered in Framington, Massachusetts. This entity operates numerous apparel, home-goods, and furniture segments such as HomeSense. Each of these entities function as branches *or brands* of Defendant TJX.

8. Plaintiff was last physically employed in Princeton, New Jersey working at Defendant TJX's location operating as Home Goods, Inc, d/b/a HomeSense (hereinafter, "Defendant HomeSense"). This particular brand of Defendant TJX operates as a discount home furnishing store.

9. Defendant TJX has established, operated, managed, and overseen more than 35 locations doing business as HomeSense in the United States alone. Information, policies, expectations, and processes within each HomeSense location are established and maintained by Defendant TJX. Due to overlapping resources, management, policies, shared financial control, and integrated operations, Defendants TJX and HomeSense are properly considered Plaintiff's single, joint and/or integrated employer(s) for the purpose of this action.[1]

10. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## IV. FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. In total, Plaintiff was employed with Defendant TJX for approximately 6.5 years (until resigning from her employment). She was hired effective on or about June 28, 2015.

13. Plaintiff resigned from her employment with Defendants in December of 2021 (giving appropriate and professional notice of same).

14. At all relevant times underlying this lawsuit, Plaintiff was employed as an "Assistant Store Manager," internally (within Defendants' operations) also known as an "ASM."

15. Although labeled an ASM or Assistant Manager, Plaintiff's *primary duties* were not management.

---

[1] Defendant HomeSense is not identified by a specific corporate designation in the caption of this lawsuit because discovery will be required to determine its appropriate corporate structure and corporate identity (unless it is determined that it operates solely as a fictitious business name of Defendant TJX).

16. Defendants had a system, policy, and pervasive practice of misclassifying ASMs. Defendants, recognizing their unlawful practices, changed Plaintiff (and other ASMs) from "salaried" employees to "hourly" employees toward the end of Plaintiff's tenure with Defendants (in February of 2021).

17. Because this is an individual case (as opposed to multi-plaintiff, class, or collective claims), Plaintiff identifies *her* duties and work structure as it pertained to *her* work (while Plaintiff worked for Defendants within New Jersey) with a later broader contrast set forth *infra*. Plaintiff's primary duties at her location(s) within New Jersey were as follows:

    a) Unloading trucks of merchandise;

    b) Stocking merchandise;

    c) Setting up displays of merchandise;

    d) Working as a cashier;

    e) Facing shelves;

    f) Cleaning;

    g) Answering customer(s) questions about products;

    h) Internal sales duties;

    i) Putting up signs, pricing, and other notations throughout the store;

    j) Greeting customers; and

    k) Many other labor ***and non-management*** duties.

18. Plaintiff was labeled as an "ASM" (indicating she was an Assistant "Manager"), but at least 90% of Plaintiff's job was non-supervisory or non-management (and hence, her primary duties were non-management).

19. Defendants offered such low pay rates that they struggled to find store associates and generally ran operations with gross understaffing. As a result, ASMs such as Plaintiff were in essence used as cheap catchall labor. Plaintiff and other ASMs were paid a salary but were required to fill in daily and weekly for all staffing needs <u>without</u> the benefit of overtime pay. ASMs, such as Plaintiff, were functionally all-around laborers.

20. State and federal laws do exempt employees who meet the "executive" exemption from overtime entitlements. To meet such an exemption, the employee must be: (a) paid qualifying salary; and (b) perform "primary duties" that are executive management in nature. *See* 29 C.F.R. 541.100. More specifically, "an exempt 'executive' is any employee:"

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;
>
> *(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;*
>
> *(3) Who customarily and regularly directs the work of two or more other employees; and*
>
> *(4) Who has the authority to hire or fire other employees . . .*
>
> *See Hickton v. Enter. Rent-A-Car Co.* (*In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*), 2012 U.S. Dist. LEXIS 101095, at *66 (W.D. Pa. 2012), citing, 29 C.F.R. § 541.100(a).

21. While Plaintiff was paid a qualifying salary, she <u>never</u> performed "primary duties" of executive management (as her primary duties as outlined above were actually labor-related and non-management related).

22. In fact, Plaintiff <u>did not</u> have the authority to: (a) give raises or prepare evaluations; (b) terminate employees; (c) create new policies; (c) enter into contracts on behalf of Defendants; or (e) other typical management responsibilities. Plaintiff functionally worked as

5

lead laborer (irrespective of job title) who answered questions of other associates based upon her extensive knowledge of the products and company.

23. The primary duties of Plaintiff's job entailed her providing manual labor as aforementioned and outlined. Plaintiff's "primary duties" were that of a laborer for Defendants (and certainly as a non-executive).[2]

24. Referring to Plaintiff as an Assistant Manager was an intentional, knowing, and deceptive attempt on the part of Defendants to evade state and federal overtime obligations. Plaintiff's job title assigned by Defendants lacks any meaningful relevance whatsoever under applicable law(s).[3]

25. In or about February of 2021, Plaintiff had been converted to an "hourly," non-exempt employee. This change promptly followed Defendant TJX agreeing to pay in excess of $30,000,000.00 to thousands of ASMs similarly situated to Plaintiff working its different segments.

---

[2] *See e.g. Morgan v. Family Dollar Stores, Inc*., 551 F.3d 1233, 1269 (11th Cir. 2008)(affirming $35,000,000 verdict against the defendant because a class of "store managers" performed primary duties of non-management including stocking, cashier work, etc…); *Hickton v. Enter. Rent-A-Car Co.* (*In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*), 2012 U.S. Dist. LEXIS 136252 (W.D. Pa. 2012)(denying summary judgment and explaining a jury could readily conclude employee titled "manager" who performed mostly sales and other labor had "primary duties" other than management); *Marshall v. Coastal Group Management*, 1980 U.S. Dist. LEXIS 11704 (D.N.J. 1980)(reaffirming the denial of summary judgment as to managers explaining they spent most of their time prepping food, cooking, handling customers, working the cash register and cleaning finding assertions of the "executive exemption" to be "untenable").

[3] *See* 29 C.F.R. § 541.2 Job titles insufficient: "**A job title alone is insufficient to establish the exempt status** of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary **and duties meet the requirements of the regulations in this part**." (Emphasis added). *See also Marshall v. Nat'l Freight, Inc*., 1979 WL 1977, at *10 (D.N.J. 1979)(explaining that although accounts payable supervisor had a complex and laborious job, he was non-exempt because the majority percentages of his daily duties involved processing transactions and document review pursuant to company guidelines); *Shultz v. A.E. Burgess Co*., 1970 WL 668, at *4 (N.D. Ala. 1970)(field office manager was non-exempt under FLSA because the majority of his time was spent on non-exempt duties); *Roberts v. Nat'l Autotech, Inc*., 192 F. Supp. 2d 672, 675 (N.D. Tex. 2002)(granting summary judgment to the plaintiff, a store manager, because the majority if his time was spent doing non-exempt types of job duties making the managerial or administrative exemptions inapplicable under the FLSA); *Oliva v. Infinite Energy Inc*., 2012 WL 11868265, at *8-9 (N.D. Fla. 2012)(granting summary judgment to delinquent account overseers because the majority of their job was calling upon debtors and collecting documents which are non-exempt duties, making that their "primary duty").

26.     Plaintiff did not participate or join in other class or collective actions against Defendants, and she thus pursues *her own individual claims* herein.

27.     As a matter of fact, and law, Defendants are unable to set forth any contrary facts that Plaintiff could plausibly be construed to meet an "executive exemption" under state or federal laws.[4]

28.     Plaintiff averaged working 50-55 hours per week for Defendants throughout her tenure until providing voluntary notice resignation in December of 2021. And Defendants failed to abide by state and/or federal laws in properly recording Plaintiff's actual minutes / hours worked.[5] Defendants exploited Plaintiff (and other employees), failed to properly record time worked, and reckless and intentionally misclassified Plaintiff.

29.     Based upon Plaintiff's salary, her overtime rate would have been approximately $35.00 – $40.00 per hour depending upon pay rate and date of tenure. Plaintiff was not paid for such overtime from June of 2015 through February of 2021. Plaintiff only began being overtime eligible as of in or about February of 2021 and thereafter per Defendants' changed business practices.[6]

---

[4] The FLSA exempts from its overtime provisions "any 'employee in a **bona fide** executive . . . capacity.'" *Soehnle v. Hess Corp.,* 399 F. App'x 749, 750 n.1 (3d Cir. 2010)(quoting 29 U.S.C. § 213(a)(1)). In light of the broad remedial purpose of the FLSA, exemptions are narrowly construed against the employer. *Madison v. Resources for Human Dev., Inc.*, 233 F.3d 175, 183 (3d Cir. 2000). Plaintiff could not qualify as an executive under any national jurisprudence interpreting the FLSA, particularly in light of such exemptions being so narrowly construed against employers.

[5] The failure of an employer to abide by mandatory record-keeping of hours worked by an employee violates 29 U.S.C. § 211(c). As a result, an employee's estimates of hours typically worked may be accepted as an employee should not be prejudiced by an employer's failure to follow legal obligations. *See e.g. Zeng Liu v. Jen Chu Fashion Corp.*, 2004 WL 33412, at *8 (S.D.N.Y. 2004).

[6] Plaintiff's legal claims herein only apply to the timeframe in which she was treated by Defendants as a salaried, non-exempt employee. They then case effective as to when she was converted to an hourly employee. This footnote is being provided solely for absolute clarity of claims.

30. Plaintiff was not paid approximately <u>at least</u> $20,000.00 - $25,000.00 per year of overtime compensation (viewed <u>very</u> conservatively). Plaintiff is also *automatically* entitled to liquidated damages for Defendants' actions as outlined in this Complaint.[7] Such damages are in addition to mandatory legal fees and other applicable damages under state and federal law(s). *See* 29 U.S.C. § 216(b)(a prevailing plaintiff "shall" be entitled to attorney's fees).

**Count I**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Failure to Pay Overtime Compensation)**

31. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32. Plaintiff was not properly paid for all owed overtime as explained *supra*. And such actions constitute violations of the Fair Labor Standards Act ("FLSA").

**Count II**
**Violations of the New Jersey Wage and Hour Law ("NJ WHL")**
**(Failure to Pay Overtime Compensation)**

33. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[7] *See e.g*. *Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009)(Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory."); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014)(Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014)(Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26 (1st Cir. 2007)(Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 U.S. App. LEXIS 15302 (4th Cir. 2000)(Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999)(Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Industrial Molding Corp*., 167 F.3d 921 (5th Cir. 1999)(Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

34. Plaintiff was not properly paid for all owed overtime as explained s*upra*. And such actions constitute violations of the NJ WHL.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to continue to promulgate and adhere to a policy prohibiting overtime and wage violations;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' wrongful actions, including but not limited to all owed wages and overtime compensation.

C. Plaintiff is to be awarded actual damages to which she is equitably or legally entitled beyond those already specified herein;

D. Plaintiff is to be awarded liquidated damages as permitted by applicable laws;

E. Plaintiff is to be accorded other equitable relief as the Court deems just, proper, and appropriate;

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees if permitted by applicable law; and

G. Plaintiff is permitted to have a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

Ari R. Karpf, Esquire
3331 Street Road
Building 2, Suite 128
Bensalem, PA 19020

Dated: January 3, 2022